# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JANETTE ROBINSON, | ) |
| Petitioner, | ) ) ) |
| v. | ) NO. 3:18-cv-00382 |
| GLORIA GROSS, Warden, | ) ) JUDGE CAMPBELL |
| Respondent. | ) ) |

## MEMORANDUM OPINION

Petitioner Janette Robinson filed a pro se petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1), Respondent filed a response (Doc. No. 15), and Petitioner filed a reply (Doc. No. 16). As explained below, the Petition will be denied, and this action will be dismissed.

## I. PROCEDURAL BACKGROUND

A Davidson County grand jury indicted Petitioner for five counts of aggravated child abuse and one count of aggravated child neglect. (Doc. No. 14-1 at 3–10). Petitioner and the state eventually agreed that Petitioner would plead guilty to two counts of aggravated child abuse, the remaining counts would be dismissed, and Petitioner would serve two concurrent sentences of 25 years' imprisonment from the date of her arrest. (*Id.* at 24–26). On March 7, 2014, the trial court accepted Petitioner's guilty plea and imposed judgment accordingly. (*Id.* at 22–23, 27).

In a pro se letter to the trial judge postmarked March 31, 2014, Petitioner requested to withdraw her plea. (*Id.* at 30). Based on the allegations in the letter, Petitioner's counsel filed a motion to withdraw as counsel. (*Id.* at 28–30). The trial court granted Petitioner's counsel's motion and appointed new counsel. (*Id.* at 32). Petitioner's new counsel filed an amended motion to

withdraw the guilty plea. (*Id.* at 34–41). The trial court held a hearing (Doc. No. 14-3) and denied the motion on December 8, 2014 (Doc. No. 14-1 at 43–52).

Petitioner appealed, the Tennessee Court of Criminal Appeals ("TCCA") affirmed, and the Tennessee Supreme Court denied Petitioner's application for permission to appeal. *State v. Robinson*, No. M2015-00041-CCA-R3-CD, 2015 WL 8973898 (Tenn. Crim. App. Dec. 15, 2015), *perm. app. denied* Mar. 23, 2016.

Meanwhile, Petitioner filed a pro se petition for post-conviction relief in state court. (Doc. No. 14-11 at 17–25). The court appointed post-conviction counsel (*id.* at 26–29), and counsel filed an amended petition (*id.* at 32–37). The post-conviction court held a hearing (Doc. No. 14-12) and denied relief (Doc. No. 14-11 at 39–53). Petitioner appealed, the TCCA affirmed, and the Tennessee Supreme Court denied leave to appeal. *Robinson v. State*, No. M2016-00058-CCA-R3-PC, 2017 WL 363281 (Tenn. Crim. App. Jan. 25, 2017), *perm. app. denied* May 18, 2017.

## II. FACTUAL BACKGROUND

The state provided a factual basis for Petitioner's plea at the plea hearing. As context for Petitioner's claims, the Court will summarize that factual basis here.

The victim of Petitioner's charged offenses was her three-year-old child. (Doc. No. 14-2 at 10). In August 2011, the victim "was returned to the care of" Petitioner "on a trial basis." (*Id.*). On September 26, 2011, the victim presented to Vanderbilt Hospital with a fractured arm. (*Id.*). At that time, medical staff accepted Petitioner's explanation that the injury was an accident. (*Id.*).

On October 14, 2011, the victim presented to Vanderbilt again, and hospital staff diagnosed the victim with "a lacerated pancreas, a hematoma to her liver, hematomas to her head, severe bruising around her head, a concussion, and various cutaneous injuries." (*Id.* at 10–11). On October 17, the victim underwent a "skeletal survey," which "revealed an undetected rib fracture that was

healing." (*Id.* at 11). The nature of that injury "suggest[ed] it had been caused between the date of" the victim's first admission on September 26 and second admission on October 14. (*Id.*).

In explaining the victim's injuries, Petitioner stated that she was the victim's caretaker and "provided a number of conflicting accounts." (*Id.*). Two witnesses—the victim's father and the victim's sibling—observed Petitioner whip the victim with a belt or cord between August 5 and September 26, 2011. (*Id.*). And based on information from Petitioner about when the victim started experiencing symptoms, the victim sustained the lacerated pancreas, liver hematoma, and head injuries on or about October 14. (*Id.* at 11–12). Petitioner was the only individual "in a position to have caused these particular injuries on that particular date." (*Id.* at 12).

### III. ASSERTED CLAIMS

Petitioner asserts two claims: (1) that her plea was unknowing and involuntary; and (2) that her original trial counsel provided ineffective assistance. (Doc. No. 1 at 5–6). She asserts that trial counsel was specifically ineffective in failing to: (1) communicate adequately; (2) provide discovery; (3) investigate the case; and (4) mount a meaningful defense. (*Id.* at 6–7).

### III. STANDARD OF REVIEW

Federal courts have the authority to grant habeas relief to state prisoners under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Harrington v. Richter*, 562 U.S. 86, 97 (2011). Under AEDPA, a claim "adjudicated on the merits" in state court cannot be the basis for federal relief unless the state court's decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Thus, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect

3

but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Under Section 2254(d)(1), a state court's decision is "contrary to" clearly established federal law "'if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision [of the Supreme Court] and nevertheless arrives at a [different result].'" *Hill v. Curtin*, 792 F.3d 670, 676 (6th Cir. 2015) (en banc) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003)). "Under the 'unreasonable application' clause of [Section] 2254(d)(1), habeas relief is available if 'the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Harris v. Haeberlin*, 526 F.3d 903, 909 (6th Cir. 2008)). A state court's application is not unreasonable under this standard simply because a federal court finds it "incorrect or erroneous"—instead, the federal court must find that the state court's application was "objectively unreasonable." *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003)).

To grant relief under Section 2254(d)(2), a federal court must find that "the state court's factual determination was 'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). State-court factual determinations are only unreasonable "if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017) (quoting *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007)). "[I]t is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was

4

'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011) (citing *Byrd v. Workman*, 645 F.3d 1159, 1172 (10th Cir. 2011)).

The demanding review of claims rejected on the merits in state court, however, is ordinarily only available to petitioners who "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). In Tennessee, a petitioner is "deemed to have exhausted all available state remedies for [a] claim" when it is presented to the Tennessee Court of Criminal Appeals. *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. Sup. Ct. R. 39). "To be properly exhausted, each claim must have been 'fairly presented' to the state courts," meaning that the petitioner presented "the same claim under the same theory . . . to the state courts." *Wagner v. Smith*, 581 F.3d 410, 414, 417 (6th Cir. 2009) (citations omitted).

The procedural default doctrine is "an important 'corollary' to the exhaustion requirement," under which "a federal court may not review federal claims that . . . the state court denied based on an adequate and independent state procedural rule." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citations omitted). A claim also may be "technically exhausted, yet procedurally defaulted," where "a petitioner fails to present a claim in state court, but that remedy is no longer available to him." *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015) (citing *Jones v. Bagley*, 696 F.3d 475, 483–84 (6th Cir. 2012)). To gain review of a procedurally defaulted claim, a petitioner must "establish 'cause' and 'prejudice,' or a 'manifest miscarriage of justice.'" *Middlebrooks v. Carpenter*, 843 F.3d 1127, 1134 (6th Cir. 2016) (citing *Sutton v. Carpenter*, 745 F.3d 787, 790–91 (6th Cir. 2014)).

## IV. ANALYSIS

As explained below, Petitioner's first claim, and most of her second claim, were adjudicated on the merits in state court, and the TCCA's rejection of those claims was not

unreasonable. Additionally, one aspect of Petitioner's second claim is procedurally defaulted without cause.

**A. Unknowing and Involuntary Plea**

Petitioner asserts that her guilty plea was unknowing and involuntary because she has mental health problems and was not taking her prescribed medication around the time of her guilty plea. (Doc. No. 1 at 5). Petitioner also offers the seemingly inconsistent assertion that she did not understand her counsel and the nature of her plea *because of* her medication. (*Id.*). The Court assumes that Petitioner means to advance just the former variation of this claim, as the latter contradicts Petitioner's arguments and testimony in state court. (*See* Doc. No. 14-3 at 10–14 (Petitioner's testimony at hearing on motion to withdraw plea reflecting that her prescribed medication improved, not worsened, her psychiatric symptoms); Doc. No. 14-12 at 14 (Petitioner's testimony at hearing on post-conviction petition that she could think more clearly when she was taking her medication)). Petitioner exhausted this claim by presenting it to the TCCA on appeal of the trial court's denial of her motion to withdraw the guilty plea.[1]

To recap the background of this claim, Petitioner's attempt to withdraw the guilty plea began with a pro se letter addressed to the trial judge. This letter focused on her counsel's alleged deficiencies. (Doc. No. 14-4 at 4 (stating that counsel advised Petitioner she "really had no choice" but to accept the state's plea offer)). The court appointed new counsel, and counsel filed an amended motion. This motion focused on Petitioner's history of mental health conditions, alleging that Petitioner did not take her prescribed mental health medication for "nearly three weeks" before

---

[1] Petitioner later asserted a freestanding claim that her guilty plea was unknowing and involuntary in her post-conviction petition. On appeal in that proceeding, the TCCA noted that "the issue of the effect of the petitioner's mental illness on the voluntariness of her pleas has already been litigated in the motion to withdraw the guilty pleas," and explained that the facts relevant to this claim were unchanged. *Robinson*, 2017 WL 363281, at *6. Thus, the Court considers this claim exhausted through Petitioner's appeal of her motion to withdraw the plea.

pleading guilty despite "indicating to the court and counsel that she was taking her anti-psychotic medication." (Doc. No. 14-1 at 37–39). The court held an evidentiary hearing, dismissed the motion in a written order, and the TCCA affirmed.

As the TCCA explained on appeal, Petitioner's motion to withdraw the guilty plea was governed by Rule 32(f) of the Tennessee Rules of Criminal Procedure. *Robinson*, 2015 WL 8973898, at *5. Under this rule, "a trial court may set aside a guilty plea '[a]fter sentence is imposed but before the judgment becomes final' in order to correct a 'manifest injustice.'" *Id.* One of several factors that supports a showing of "manifest injustice" is whether "the plea was not knowingly, voluntarily, and understandingly entered." *Id.* (quoting *State v. Crowe*, 168 S.W.3d 731, 742 (Tenn. 2005)). Indeed, in Petitioner's amended motion to withdraw the guilty plea, she specifically argued that her failure to take mental health medication prevented her from "fully understand[ing] the nature and consequences of her plea." (Doc. No. 14-1 at 40). Petitioner presented the same argument in her appellate brief. (Doc. No. 14-5 at 13). The Court evaluates the TCCA's ruling in this context.

In the process of analyzing Petitioner's argument, the TCCA cited to the Tennessee Supreme Court's decision in *State v. Crowe*, 168 S.W.3d 731 (Tenn. 2005), which in turn incorporated the United States Supreme Court's governing precedent in *Boykin v. Alabama*, 395 U.S. 238 (1969), and *North Carolina v. Alford*, 400 U.S. 25 (1970). A state court decision is not unreasonable under AEDPA for failing to directly cite to controlling federal precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). And here, the TCCA's analysis did not contradict federal law.

"A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely

consequences.'" *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). "A state court's determination that a guilty plea was valid is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence." *Wright v. Lafler*, 247 F. App'x 701, 705 (6th Cir. 2007) (citing *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993)).

The TCCA found that Petitioner "entered a voluntary, intelligent, and knowing plea," *Robinson*, 2015 WL 8973898, at *6, reasoning as follows:

> The record reflects that at the guilty plea hearing, the trial court questioned [Petitioner] regarding her understanding of the charges against her, her available defenses, the possible sentences, and the effect of the guilty plea on her permanent record. The court also questioned [Petitioner] relative to her medications, how often she took them, and any possible effect they might have on her understanding of the proceedings. [Petitioner] testified she had been taking her medications, acknowledged her understanding of her plea, and said she wanted to waive her rights and plead guilty.
>
> [Petitioner's] letter contained complaints about defense counsel's explanation of her rights but did not mention her medications. Counsel testified that [Petitioner] did not contact him after her plea and that the first notice he received of any problem was when he received the forwarded letter from the trial court. The trial court credited counsel's testimony that [Petitioner] did not tell him prior to the guilty plea hearing she had not been taking her medications.

*Id.* at *5–6.

The TCCA's conclusion was neither contrary to, nor an unreasonable application of, Supreme Court precedent, and it was not based on an unreasonable determination of the facts before it. Indeed, its analysis relied on an accurate summary of the entire available record, including Petitioner's plea hearing testimony, her pro se letter requesting to withdraw the plea, and the evidentiary hearing testimony of Petitioner and her original trial counsel. *Id.* at *1–5.

During the plea colloquy, the court specifically asked Petitioner about her medication, and she testified as follows:

8

| | | |
|---|---|---|
| Q. | Are you taking any medication? | |
| A. | Yes, ma'am. | |
| Q. | What kind of medication do you take? | |
| A. | Depakote and Zyprexa. | |
| Q. | Okay. Now, do you take that at night or in the morning or both? | |
| A. | Both. | |
| Q. | Did you have your medicine this morning? | |
| A. | Yes, ma'am. | |
| Q. | And last night? | |
| A. | Yes, ma'am. | |
| Q. | Now, the fact that you're taking your medication is that affecting your ability to understand what you're doing? | |
| A. | No, ma'am. | |
| Q. | Okay. And are you having any trouble understanding what you're doing? | |
| A. | No, ma'am. | |

(Doc. No. 14-2 at 6–7). As this excerpt shows, Petitioner provided detailed information about her prescription medication in a lucid manner, including the names of the medications, how often she took them, and that she was current on her medication. This plea hearing testimony "carries great weight." *Marks v. Davis*, 504 F. App'x 383, 386 (6th Cir. 2012) (citing *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977)); *see Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (quoting *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986)) ("[W]here the court has scrupulously followed the required procedure [during a plea colloquy], the defendant is bound by [her] statements in response to that court's inquiry.").

The TCCA found additional evidence to support its conclusion in Petitioner's pro se letter to the trial court—the beginning of her attempt to withdraw the plea. There, Petitioner did not mention any issue with mental health or medication, but instead asserted that original trial counsel did not adequately explain her rights. It was not until the court appointed new counsel, and new counsel filed an amended motion to withdraw the plea, that Petitioner first alleged she was not taking her medication at the time of the plea hearing.

The trial court heard testimony on this point from Petitioner and Petitioner's original trial counsel at the hearing on the motion to withdraw. Petitioner testified that "she told counsel at every meeting before she entered her guilty pleas that she had not been taking her medications and that counsel knew she had been off her medications for three weeks before the plea hearing." *Robinson*, 2015 WL 29738989, at *3. Counsel, on the other hand, "denied [Petitioner] told him that she had stopped taking her medications at the time of the guilty plea hearing." *Id.* at *4. The trial court found that Petitioner's testimony was not credible, and the TCCA adopted this credibility determination. *Id.* at *6.

A federal habeas court "may not lightly ignore" a state court's "credibility findings; they are entitled to 'great deference' and 'must be sustained unless [they are] clearly erroneous,' particularly in the context of AEDPA-limited habeas review." *Howell v. Hodge*, 710 F.3d 381, 386 (6th Cir. 2013) (quoting *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam)). Petitioner has not provided a basis to reexamine the state court's credibility findings. Petitioner also has not presented evidence to rebut the state court's presumptively correct finding that she entered a valid guilty plea. This claim will be denied. *See Stewart v. Morgan*, 232 F. App'x 482, 490–91 (6th Cir. 2007) (denying habeas relief on petitioner's claim that his guilty plea was invalid where he

presented "evidence of past psychiatric problems and [] self-serving, after-the-fact testimony that" drug use impaired his competency at the plea hearing).

**B. Ineffective Assistance of Trial Counsel**

Petitioner also asserts that original trial counsel was ineffective in several ways, and all but one of these sub-claims was exhausted through Petitioner's post-conviction appeal. The federal law governing the adequacy of a criminal defendant's representation is defined in *Strickland v. Washington*, 466 U.S. 668 (1984). *Premo v. Moore*, 562 U.S. 115, 121 (2011). The TCCA correctly identified the *Strickland* standard before considering Petitioner's claims on the merits. *Robinson*, 2017 WL 363281, at *4–5.

Under *Strickland*, a petitioner must show (1) deficient performance of counsel and (2) prejudice to the defendant. *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009) (citing *Strickland*, 466 U.S. at 687). "[A] court deciding an ineffective assistance claim" need not "address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. Counsel's performance is deficient where it falls "below an objective standard of reasonableness." *Id.* at 687–88. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

When a petitioner claims that "ineffective assistance led to the improvident acceptance of a guilty plea," the prejudice prong of *Strickland* requires her to "show 'that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v.*

*Lockhart*, 474 U.S. 52, 59 (1985)). The Supreme Court has explained what a heavy burden a petitioner bears in such circumstances:

> "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." *United States v. Timmreck*, 441 U.S. 780, 784 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

*Lee v. United States*, 137 S. Ct. 1958, 1967 (2017).

Furthermore, when a petitioner raises an exhausted claim of ineffective assistance in a federal habeas petition, "[t]he pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but "whether the state court's application of the *Strickland* standard was unreasonable." *Harrington*, 562 U.S. at 101. This amounts to a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). That is because, under Section 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* (quoting *Williams*, 529 U.S. at 410). Accordingly, "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Id.*

1. <u>Failure to Communicate</u>

Petitioner asserts that counsel provided ineffective assistance by "only visit[ing] her a few times but not follow[ing] through with her requests." (Doc. No. 1 at 5). She also asserts that counsel did not "ma[k]e [her] aware of a trial date being set." (*Id.*). Together, the Court considers these arguments exhausted through Petitioner's post-conviction claim that counsel was ineffective for failing to communicate with her.

The TCCA rejected this claim on appeal, noting that "[t]he record fully supports the findings and conclusions of the post-conviction court," including that court's finding that "trial counsel . . . meaningfully communicated with the petitioner, including about the charges, the punishment she faced, defense theories, and the plea bargain agreement." *Robinson*, 2017 WL 363281, at *5–6. In making this finding, the post-conviction court faced a few points of conflicting evidentiary hearing testimony from Petitioner and counsel, and "specifically accredited the testimony of trial counsel over that of [Petitioner]." *Id.* at *5.

As to Petitioner's assertion that counsel only visited her a few times, Petitioner testified that counsel "visited her '[m]aybe three times' when she was in jail." *Id.* at *3. By contrast, counsel testified that he "specifically recalled having made four different visits to [Petitioner] while accompanied by his investigator. In addition, he believed he made one or two visits alone." *Id.* The post-conviction court credited counsel's testimony, and this Court must defer to this credibility finding as long as it is not "clearly erroneous." *Howell*, 710 F.3d at 386 (quoting *Felkner*, 562 U.S. at 598). Moreover, as the post-conviction court noted, counsel "also had the opportunity to meet with Petitioner on court dates over the course of the year." (Doc. No. 14-11 at 50–51.)

As to Petitioner's assertion that counsel did not tell her about a trial date being set, the Court need not accept factual allegations in a habeas petition that are refuted by the state court record. *Schriro*, 550 U.S. at 474. And here, the record reflects that Petitioner, trial counsel, and a state prosecutor all signed a "Trial Date Certificate" dated August 15, 2013. (Doc. No. 14-4 at 24). This certificate shows that a status conference was set for March 7, 2014, and that trial was set for April 4, 2014. (*Id.*). This certificate also contains an affirmation that trial counsel informed Petitioner of the trial and status dates. (*Id.*). Petitioner ultimately pleaded guilty on the status

13

conference date. The Court, therefore, gives no weight to Petitioner's assertion that counsel did not make her aware of the trial date.

In sum, Petitioner has not carried her burden of demonstrating that the TCCA was unreasonable in determining that counsel was not ineffective for failing to communicate with her. This sub-claim will be denied.

2. Failure to Provide Discovery

Petitioner next asserts that counsel was ineffective for failing to provide her discovery. (Doc. No. 1 at 5). The TCCA rejected this claim, again finding to be credible trial counsel's side of a discrepancy in evidentiary hearing testimony. *Robinson*, 2017 WL 363281, at *6.

Specifically, Petitioner testified that counsel "never provided her with any discovery, despite her asking him for it both in writing and orally. [Petitioner] claimed that when she asked, counsel told her that he did not have enough time to provide her with copies of discovery." *Id.* at *3. Counsel acknowledged that the "bulk of the discovery materials consisted of medical records, which [he] thought he may not have provided to the petitioner." *Id.* Counsel also testified, however, that he "probably provided [Petitioner] with . . . police reports and [witness] statements and various things like that." (Doc. No. 14-12 at 21–22). Regardless, counsel affirmatively testified that he "reviewed with [Petitioner] the discovery in the case" and "the State's evidence against her." *Robinson*, 2017 WL 363281, at *3.

By crediting counsel's testimony, the TCCA effectively found that counsel was not deficient for failing to provide discovery. *Id.* at *6 ("Trial counsel's testimony established that he . . . reviewed discovery" and "that he held discussions with [Petitioner] about the State's evidence against her."). Because Petitioner has not demonstrated that this credibility determination was

"clearly erroneous," *see Howell*, 710 F.3d at 386 (quoting *Felkner*, 562 U.S. at 598), the state court's resolution of this sub-claim was not unreasonable.

Moreover, Petitioner also has not demonstrated that she suffered prejudice from counsel's alleged failure to provide discovery because she has not pointed to any evidence that, if provided to or reviewed with Petitioner, would have caused her "not to plead guilty but instead go to trial." *See Reddic v. Conerly*, 294 F. App'x 190, 192 (6th Cir. 2008) (rejecting claim that counsel "failed to investigate and review discovery" where petitioner "made no showing that there was any evidence to be discovered that, if counsel had only learned of it, would have caused [petitioner] not to plead guilty but instead go to trial"). For all of these reasons, this sub-claim will be denied.

### 3. Failure to Investigate

Petitioner also asserts that counsel was ineffective for failing to investigate the case, including by uncritically interviewing the victim's father and entirely neglecting to interview potential witnesses. (Doc. No. 1 at 5). According to Petitioner, she also told counsel that "the crime was committed by" the victim's father. (*Id.*).

Like the two previous sub-claims, the TCCA rejected this sub-claim in large part by crediting counsel's evidentiary hearing testimony over that of Petitioner. Petitioner acknowledged that counsel used an investigator to help him in the case. *Robinson*, 2017 WL 363281, at *3. She testified, however, that this investigator talked "with the victim's father, with the results being that counsel 'told [her] that [the victim's father] seem[ed] like a nice guy' and that counsel did not believe he was capable of the crimes." *Id.* Petitioner also testified that "she gave counsel the names and contact information of witnesses, including Bianca German and Shirley Work, who could have corroborated her accusations against the victim's father, but that counsel told her he did not have enough time to interview them." *Id.*

15

Counsel, meanwhile, testified that the "investigator interviewed the victim's father and his sister," although Petitioner did not accuse the victim's father of being the perpetrator "until the very end of the case." *Id.* at *4. According to counsel, "the victim's father made no admissions in the case and had at least a partial alibi, having been with his sister at one point and having been incarcerated during another period in which the abuse was alleged to have occurred." *Id.* As to Bianca German, counsel testified that "he remembered the name [] but could not recall if his investigator had interviewed her. However, he was certain that if [Petitioner] told him that Ms. German had knowledge that the victim's father had committed the crimes, he would have interviewed her and any other witness with similar claims." *Id.* at *3. Counsel specifically testified that "he was never provided with the name of any other witness alleged to have knowledge of the victim's father's having committed the abuse." *Id.* at *4.

The TCCA found counsel's side of this testimony to be credible. *Id.* at *6. Petitioner has not demonstrated that counsel's testimony was "clearly erroneous." *See Howell*, 710 F.3d at 386 (quoting *Felkner*, 562 U.S. at 598). The Court, therefore, must defer to the state court's credibility determination. And when crediting counsel's testimony that Petitioner "did not bring up the theory of the victim's father as the perpetrator until very late in the case," *Robinson*, 2017 WL 363281, at *6, particularly considering that the "victim's father made no admissions in the case and had at least a partial alibi," *id.* at *4, it was clearly reasonable for the state court to determine that counsel was not ineffective for not further investigating the victim's father. Likewise, when crediting counsel's testimony that Petitioner "never informed counsel of any witnesses with knowledge of the victim's father's having committed the crimes," *id.* at *6, it was also reasonable for the state court to conclude that counsel was not ineffective for failing to investigate other potential witnesses. This sub-claim will therefore be denied as well.

16

### 4. Failure to Mount a Meaningful Defense

Finally, Petitioner makes the somewhat ambiguous assertion that counsel was ineffective for failing to "mount a meaningful offense." (Doc. No. 1 at 5). Petitioner asserted a claim using this same phrase through her amended post-conviction petition (Doc. No. 14-11 at 34), and the post-conviction specifically acknowledged this assertion in its written order denying relief (*id.* at 49). The phrase "mount a meaningful defense," however, does not appear in Petitioner's post-conviction appeal brief. (*See* Doc. No. 14-14). Thus, Petitioner did not fairly present this particular sub-claim to the TCCA for review. And at this juncture, Petitioner can no longer do so. *See* Tenn. Code Ann. §§ 40-30-102(a), (c) (providing that the statute of limitations for post-conviction petitions in Tennessee is one year, and that a petitioner may not file more than one petition attacking a single judgment). Accordingly, this sub-claim is procedurally defaulted.

Petitioner does not attempt to establish "cause," "prejudice," or a "manifest miscarriage of justice" to excuse the default of this sub-claim. In some circumstances, the ineffective assistance of post-conviction counsel may be used to establish the "cause" necessary to obtain review of a procedurally defaulted claim. *See Martinez v. Ryan*, 566 U.S. 1, 17 (2012)). But ineffective assistance of post-conviction counsel can act as cause only when the ineffectiveness occurs at the initial review stage, not the appeal stage. *Atkins*, 792 F.3d at 661 (emphasis added) (quoting *West v. Carpenter*, 790 F.3d 693, 699 (6th Cir. 2015)) ("[A]ttorney error at state post-conviction appellate proceedings cannot excuse procedural default."). Thus, even if Petitioner were to invoke *Martinez* here, this sub-claim would still not be subject to habeas review by this Court.

### V. CONCLUSION

For these reasons, Petitioner's claims do not entitle her to relief under Section 2254. Accordingly, the Petition (Doc. No. 1) will be denied and this action will be dismissed.

17

Because this constitutes a "final order adverse to" Petitioner, the Court must "issue or deny a certificate of appealability." Habeas Rule 11(a). A certificate of appealability may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition [is] denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 253 (6th Cir. 2017) (quoting *Slack*, 529 U.S. at 484). Here, the Court concludes that Petitioner has not satisfied these standards and will therefore deny a certificate of appealability.

The Court will enter an appropriate Order.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE